Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is 19-1282 Machado Sigaran v. William P. Barr. Good morning, your honors. Good morning, Mr. Rubin. Judge Toeya, Judge Boudin, Judge Cayetta. It pleases this honorable court, my name is Jeff Rubin. I represent my client who I refer to as Jairo Machado. With me as co-counsel from my firm, if acceptable, I have Todd Parmalo and I have Tim Williams. Your honor, Judge Toeya, may I reserve three minutes of rebuttal of my time? You may. Thank you. Mr. Machado entered the United States in 1997. Just 16 years old, a teenage boy, did not know he was supposed to be at his immigration court hearing. That is the overriding issue that started on the motion to reopen that was granted by the immigration judge in Hollandton, Texas in 2012 and continues to be an issue until this moment. First, about Mr. Machado, having entered the United States at the tender age of 16, has remained in the United States, but for the 98 days discussed in this matter. He has three U.S. citizen children that are all under the age of 17 and he owns a roofing business and has essentially built his life as a 38 year old man still living in the United States. The notice of hearing for Mr. Machado to appear at the court was purposely withheld by a guardian who had promised to the court to take care of his obligations and Mr. Machado filed some 11 years later. The motion was arrested, excuse me, in 2011 after this 1997 in absentia order had entered. It was merely arrested as a result of this in absentia order from what the record reveals. Could you clarify the circumstances of him not getting the notice? I had understood from the record that he had moved and not provided a forwarding address and there was no claim as in our renault decision that he was still using the prior location as a mail drop. So there was affidavits, well there were first letters sent to the court by his guardian stating that she did not want to have any more responsibility for him, that he had moved to be with his mother and then there was an affidavit providing support of the motion to reopen by this woman that she purposefully and intentionally did not forward the hearing notices, did not want him to have the hearing notices. So he did not know. Right, as I understood it, the notices, he was in location A, location A was where the landlord guardian lived and then he and his mother moved to location B. That's correct and the government makes a lot of the obligation of this 16 year old boy who maybe within a few years is to comply with a court order to change address. Yes, important separate issue but just to clarify, am I correct in my understanding of the record that the mother and he moved to location B and did not provide a forwarding address to the government? That is correct, your honor. So under normal, under our 16 years old because whatever the landlord guardian's reasons for not sending it on, there's no exception that your landlord, your prior landlord didn't forward something. It was still lack of notice. First of all, the notice to appear did not have a date and time, so section 240 does refer to a lack of notice. Now you're going to a third issue and I'm really trying to clarify the first issue that he did not provide a forwarding address in but for the fact that he's 16 and then but for the fact that you want to then get to the notice to appear issue? I think he decided to spend time living with his mother but certainly the guardian who was still in the motion to reopen did say that although he credits proper service will reopen because he did not have notice of the hearing. Now the motion to reopen itself only cited to lack of notice, did not cite at all to sua sponte authority which is where the government tries to turn the course of the analysis that it's not going to happen and I'm all for removal order. This removal order was simply void in ab initio because the motion to reopen was granted and the only argument made in the initial motion to reopen was indeed lack of notice and it was lack of notice in that the notices were purposely withheld from him by an adult guardian who could have easily provided that hearing notice to him. So although he was spending time away from the home, it wasn't as though the hearing was going to happen. There was a lack of notice with respect to the fact that he was not knowledgeable of the hearing and that was intentional willful act of a third party, his guardian, but also the motion to reopen that was originally filed did reference that third argument, Your Honor, that it was not in accordance with Section 239A.1 and 2 where the notice to appear should have actually from the outset contained a date and time of hearing. This is what of course the Pereira recessions matter turned on and with respect to the stop time rule which affects his eligibility for cancellation which I'll get to in a It argued lack of notice because he did not physically receive it, but it also argued that the lack of notice was because the notice to appear did not contain a date and time. This was an unopposed motion. This motion was not appealed by the government. This motion basically was the law of the case and the lack of notice. I thought the BIA could take up an issue even if the government hasn't appealed. The BIA took up the issue for only the first time upon remand and the issue of whether this is a reopening or a rescission and I understand that the immigration judges wording may have not been the most clear or may have been a little awkward, but the reality is that the immigration judge only relied upon a motion to reopen that, simply did not argue anything other than the lack of notice. And the government requested remand which was because the immigration judge originally said that we could not cite to any case that squarely addressed the issue of temporary protected status in the context of a person leaving on a removal order. The cases on point really addressed cancellation of removal in the continuous physical presence. It doesn't relate to TPS. TPS actually is a different creature from cancellation of removal, TPS being temporary protected status, in that it carves out statutory exceptions, a brief and casual and innocent departure where here the fact that there was a removal order rescinded and voided in Abenecio would excuse that time that was outside the United States. As a matter of fact, it was the immigration judge and the Homeland Security at the initial hearing before the immigration court where that was the only issue, was that removal order. And on appeal, the board said, yes, there's no real legal authority. And then when this court had this matter... Are you saying that the BIA did not have jurisdiction or that it didn't for some other reason have the power to vacate or reverse or rescind the Texas IJ's ruling? Well, upon remand is when this issue was first raised. Assume they were correct on the merits. Are you arguing that nevertheless they had no ability at that point to undo the IJ ruling? Something was unfair at that stage, Your Honor, where this had not been litigated. It would need to go back to the... I don't think I'm hearing. Are you or are you not arguing that the BIA lacked the capacity, the power, the jurisdiction or anything like that to reverse the IJ's ruling? To reverse the Texas IJ's decision if we assume that decision was wrong on the merits? Yes, Your Honor. And I think Catherine Thomas speaks to the limitation. I think that this is something that the Attorney General has spoken to recently, that immigration judges are limited in their authority. They're limited by their power in the statute. And this is the agreed upon government remand. But I'm not asking about limitations on the IJ. I'm trying to get you to focus on whether the BIA lacked the authority to reverse the IJ. Yes, it was beyond the scope of the argument at that time. The issue of the reopening, the lack of notice, the only argument raised in the initial motion, the not appealed by the government at the beginning of the case. It was remanded in light of the rescission of the underlying removal lawyer. So the government uses that language in light of the rescission. And now the board takes a turn based on a new memorandum to say that this was somehow a sua sponte authority from a Fifth Circuit judge on a motion to reopen. That was never appealed, never afforded the opportunity to litigate in its normal course. I would say that was definitely beyond the scope of the BIA's authority to turn the case in that direction. Your Honor, for the same reasons that the physical presence was not interrupted because the removal order was void, this is the rationale applied by the Bowles-Nolasco matter that the board says themselves that when there is a motion to reopen or rescind based upon lack of notice, that it's a legal nullity from the beginning of the case that the applicant, the person, restores his legal status as if it didn't happen. So I would argue that the 98-day presence abroad as a result of the unlawful enforced removal order that was not voluntarily, it was not a voluntary action of Mr. Machado to leave the country, should not be held against him in the context of his application for cancellation. The notice to appear did not contain a date and time, and if I just may briefly finish. Finish briefly. It was more than 10 years before he received his first notice of hearing, like Mr. Pereira, and the only issue would be whether the 98 days in the past 10 years would interrupt his continuous physical presence. An issue that would be mooted, frankly, within two years because the continuous presence does continue to accrue. Thank you. I said briefly. Your time is up right now. Thank you. Good morning. It's okay. I'm trying to find my name. I'm sure it's just kind of says with respect to the to the board's authority to consider the issues that it did in this particular order. This court, this court's remand order said the remand was to be in accordance with the government's motion to remand. And the government's motion remand is expressly stated on page 295, 296 administrative record that nothing in this motion either represents any admission regarding the merits of the instant petition or limits the authority of the board of the immigration judge to pursue any particular course of action on remand. So we think that going into the priority of the Texas immigration judge 2012 order was not only within the scope of the TPS eligibility, because it would say in our brief, the burden of TPS eligibility also include the burden to disprove any allegations of ineligibility. But it didn't. I mean, our motion said that the board was free to address any additional issue. Yes. Finish. I have a question. Sure. In accordance with our motion, the board was free to to to address any additional issue as it saw fit to resolve the case, which is also consistent with this court's Supreme Court case regarding remand. If the court of appeals not specifically excluded, then the lower court or in this case, administrative agency is free to explore additional issues. Yes. All right. I'll ask my question now. It's a different area that has been discussed. I would like to ask you this. Is the finding of the IJ that the landlady intentionally kept the petitioner unaware? Is that a finding of fact? I suppose it could be a finding of fact. Yes. No, no. Is it or is it not? Okay. Yes. Yes. What authority does the BIA have to make different findings of fact on that point? Well, I think the board disputed that this. So that's a finding of fact. It is a finding of fact. And I would submit to you, yes, that the board did not dispute that the landlady did not. The board did not dispute that the notice of hearing were never physically placed in the petitioner's hands. Yes. If I may. Yes. I mean, I'd actually ask a very similar question in my moot session. So here the immigration judge, the Texas immigration judge said the petitioner did receive proper notice. So he didn't say actual notice. He said proper notice. What we think the immigration judge meant was that the petitioner received constructive notice of the notices of hearings while he was still involved, setting aside the fact that he moved, which is a whole other issue. So, I mean, you're familiar with the doctrine of constructive notice? Yes. If I remember in law school, there have been times when a litigant is in court proceedings or adversarial proceedings, he tries to frustrate perfection of notice, moving away or going someplace where no one's going to find him, and the court or litigants were permitted to  do so. I remember that classic example, and the point being people can't frustrate perfection of notice. The government has very limited resources. Here the government did all it could reasonably be expected to do to tell the petitioner he was supposed to be in Texas immigration court. So they provided, they mailed the notice to the address he provided, and that notice apparently was in fact mailed. Now, the fact that someone in the household didn't physically say, hey, he got some mail, that's not enough to defeat notice, that is still good constructive notice. That's what we think the immigration judge meant by proper notice. Did that answer your question? I got your viewpoint. The board does recognize the doctrine of constructive notice. I should have said this in my brief, but the Department of Homeland Security discussed this with the board. That's on page 26 to 27 of the administrative record. They discussed a case called GYR, which involved very similar facts where a notice was sent and in fact delivered to a household, but the household never, for whatever reason, never told the action. Let me pose a hypothetical. The mail arrives at this location, and somebody removes it from the place where it would go, and he never gets the notice. A member of the household? A vandal? I guess the doctrine of constructive notice implies some sort of bad faith on the part of the recipient. Is there bad faith here? He claims he's a minor. Okay, fine. His guardian, his mother, there's some evidence in the record indicating the mother told the landlady, hey, I really don't want my son That's not what Isaiah found, is it? It looks like the landlady interpreted the mother's comments as saying, please don't give the notice to my son. We think that's what happened here. She did not provide the notice to the petitioner for a reason. As I understand the record, it was that she intentionally But she had a motive, though. The motive was she was trying to carry out the mother's wishes. Well, I'll have to read the record again. Okay, all right. This is discussed in our brief a little bit. Going back to the original point, though. So, again, the statute, this is what Congress says. The statute, the INA says that motions for, I'm sorry, independent of century of removal orders can only be rescinded in very, very limited circumstances. Well, two of them do not apply here. One, if the alien is incarcerated, or at least in custody, and the failure to appear is no fault of their own. Number two, exceptional circumstances, but only if the motion is made within 180 days. That arguably could have been a potential remedy here. Number three, lack of notice. It doesn't say lack of actual notice, it says lack of notice. Like I said before, the board interprets notice as both actual notice and constructive notice as well. Given the fact that the immigration judge found the immigration judge in Texas found in 2011, 2012, I'm sorry, that the alien had received proper notice, I mean, it would be beneficial if he was constructive, but he used proper, so that therefore, I mean, those three bases were just not applicable. So the board, there's no other way to interpret the immigration judge's order other than the fact that he used his equitable powers as a matter of equity to rescind the order. Why shouldn't, since he found proper notice, and as you point out, the government did everything it could do to serve the notice, but then he nevertheless excused the failure to appear. Can we assume that he was therefore necessarily finding extenuating circumstances here? If you found extenuating circumstances, you only get 180 days to file your motion to reopen. Otherwise, you'd have to file a document of equitable tolling, which if the board said in its opinion, one of the footnotes, that's just not appropriate here, given the petitioner's lack of diligence. He waited 11 years, but I should also point out that at the time, the notice of hearing, when he was living somewhere else in 2000, the notice of hearing that eventually led to his exemption order, he was an adult, he was 19, so he was very near, he was a minor at the time, he was put in removal proceedings, but he was very close to the Asian majority. This immigration judge, the original immigration judge in Texas, was a different judge. She was pretty liberal. She gave this petitioner numerous chances, had numerous hearings, before she finally gave up three years later, saying he's not coming. And if petitioner had, I mean, he had remedies. He had remedies. He chose not to pursue them. Counsel for petitioner refers to the landlady as the guardian. Was she the official guardian of the petitioner? I do not believe so. No. She was, I mean, I suppose for lack of a better word, de facto guardian. She was apparently a family friend of Fisher's mother, came to the United States some years earlier, was living with the landlady, and the landlady either told the immigration authorities or the petitioner, come up to Boston and either petitioner or the landlady gave the address in Chelsea. So, I mean, I do not believe they had any legal relationship between the two, other than just being friends. But perhaps Mr. Rubin can clarify that. And again... No, I'm not asking any questions. I'm just looking at this point. Going on to Petitioner's jurisdictional challenges. As we said in our brief, the court in Pontusky Bar, I mean, held at the Prairie, other than to the stop time context, and while Petitioner had cancellation removal, and while Petitioner did in fact have a potential cancellation removal claim, his removal is deficient for the same reasons that Mr. TPS claimed. He cannot satisfy the continuous physical presence requirement for cancellation removal. So, as we explained in our brief, we do not believe Prairie has any application to these particular facts in this case. So, yes, and with respect to the to his actual arrest by immigration authorities and being placed in the immigration proceeding, I think it's important to remember that the notice to appear was not only given to him before, but was also read to him in Spanish. So that's on page 962 of the administrative records. So, I mean, he may not have understood it, understand the legal terms, but he at least understood what was being said. And the notice to appear makes very clear that if you do not provide up-to-date contact information, then the immigration court could very well enter an essential order in your absence. I mean, the immigration judge, and again, the immigration judge gave Petitioner here plenty of chances. As soon as the landlady sent that letter to the immigration court saying Petitioner is no longer at the Chelsea address, the immigration judge could have entered an essential order right then and there, but she chose to give the Petitioner several chances to show up. And he claims that he never received them, but again, in these particular circumstances, his lack of actual notice is not dispositive. He received constructive notice and he moved away. So, if there's... I think I made my main point, so if there's no other questions, I'm happy to rest on the breeze. It's the court's time. So, thank you. Okay, thank you very much. Mr. Rubin, I think you have some time. Thank you. I think that, Judge Cayetti, you brought up an interesting point about extenuating a circumstance. I don't think that applies to the analysis here for the motion to reopen. And in fact, this is not the only issue before this court, whether the motion to reopen was properly granted or not. Again, this was not opposed, was not appealed, and the only argument made in that motion to open originally was lack of notice. The extenuating circumstance is a separate ground to forgive the absence as it applies to eligibility for temporary protected status. But what about the 180 days? Well, the 180 days is with respect to filing a motion to reopen. The extenuating circumstances outside the control of the alien is a statutory exception to the continuous residency requirement found in 8 U.S.C. 1254A. This is not subject to 180 days. And how do you respond to the argument we just heard that the mandate pursuant to the motion to remand left ample room for BIA to consider any and all relevant issues on remand? To the extent they did, they committed error, Your Honor. But now you're getting to the merits. I think the point was being made in the context of your assertion that they did not have power to revisit what the IJ has decided and the argument being made here is the mandate left them with that power putting to one side whether they were correct or not on the merits. How do you respond to the assertion that the remand in light of the remand order left the BIA with the power to at least consider what the IJ had done, whether it was correct or not? And again, I just go to the plain language of the remand order which states that will permit the agency to consider its eligibility in light of the rescission of the underlying removal order. Rescission is consistent with the vacating of the removal order and also rescission gets to lack of notice and complies with Section 240 for an absentia lack of notice motion. It's indeed the only argument that was ever made originally. So you would say no matter how broad their motion to remand was, our actual remand order itself was more limited? Yes, Your Honor. And in fact, the government's own wording in their unopposed request for remand asked in light of the rescission of the underlying removal order. So I think those words carry some weight. And again, I'd ask this Court to instruct and grant the petition in that Mr. Machado is eligible for the minimal form of relief of temporary protected status, a reform relief that continues available to him today. There is pending litigation that leaves temporary protected status still indefinitely available. I would also ask this Court to look at the fact that in that motion to reopen originally filed, there was the argument about no date and time on the original notice to appear. And also I would ask the Court to disregard the 98-day break in the continuous physical presence as it was beyond his control to be outside the country for this unlawful order. Thank you, Your Honor.